ly, in relation to such enrollments, and the same proceeding shall be had in similar cases touching such enrollments, and the ships or vessels so enrolled, with the master or owner or owners thereof, shall be subject to the same requisites as are in those respects provided for vessels registered by virtue of the aforesaid act. This act of 1793 does not contain any provision expressly declaring a forfeiture of the vessel in case the oath or affidavit shall be false, but provides for the indictment and punishment of any party who shall knowingly swear falsely in making such affidavit. But it was contended at the hearing that the provision above quoted extended the provisions for forfeiture above set forth to the case of vessels enrolled under the act of 1793.

This raises a question in regard to the construction of those provisions, in respect to which, and to the last count in the libel of information, I shall adopt the language of the late Justice Story in the case of The Two Friends [supra], as follows: "As to the last count I doubt if it alleges any matter to which the law has attached any forfeiture. It is true that the act for registering vessels, in section 4, declares that a false oath by the owner in any matter of fact required' to be sworn, in that section, previous to the grant of a registry, shall work a forfeiture of the vessel. And the act for enrolling and licensing vessels in the coasting trade and fisheries, in section 2, provides that, in order to obtain an enrollment, vessels shall possess the same qualifications, and the same requisites in all respects shall be complied with, as are made necessary to the registry of vessels, and the same duties and authorities are given and imposed on officers, and the same proceedings are to be had in similar cases touching such enrollment; and the ships or vessels so enrolled, with the masters and owners thereof, are to be subject to the same requisites as are provided for the registry of vessels. But it is nowhere declared that a violation of these provisions shall be followed with like penalties and forfeitures. On the contrary, the coasting act, in section 30, has substantially declared that the false swearing in any oaths required by that act shall be punished as willful perjury. Now, it is certainly not the duty of the court to seek out new modes of punishment where the legislature has prescribed a specific punishment in its own direct terms; nor can it be proper to pronounce that to be a qualification, requisite duty, or proceeding within the act which is a forfeiture for a willful violation of the same act." This is directly in point; and confirming, as it does, my own impression in respect to the question under consideration, I do not deem it necessary to give other reasons for my conclusion.

To say that there is very great doubt whether there could be a decree for the United States upon the last count in the

libel of information in case the affiant's knowledge of the falsity of the affidavit therein referred to had been established is not putting the case too strongly in favor of the claimants. The supreme court of the United States in the case of The Burdett, 9 Pet. [34 U. S.] 682, declared that no "individual should be punished for the violation of a law which inflicts a forfeiture of property, unless the offence shall be established beyond reasonable doubt"; and it was very properly declared by Mr. Justice Livingston in the case of The Enterprise [Case No. 4,499], that a court has no option where any considerable ambiguity arises on a penal statute, but is bound to decide in favor of the party accused. I shall therefore dismiss the libel in this case, upon the question of law already discussed without inquiring whether the affidavit made on the enrollment of the Sciota was true or false. The libel is dismissed, but there will be the usual certificate of probable cause.

---

## Case No. 16,240a.

### UNITED STATES v. SCHMIDT.

[See Case No. 16,316a.]

---

## Case No. 16,240b.

### UNITED STATES v. SCOTT.

[Betts, Scr. Bk. 221.]

District Court, D. Massachusetts. June, 1851.

CONSTITUTIONAL LAW — FUGITIVE SLAVE LAWS — EXECUTIVE AND JUDICIAL FUNCTIONS.

[1. Congress had power to pass the acts of 1793 (1 Stat. 302), and 1850 (9 Stat. 462), providing for the rendition of fugitive slaves. Prigg v. Pennsylvania, 16 Pet. (41 U. S.) 559, followed.]

[2. The rendition of a fugitive slave under the acts of 1793 and 1850 is an executive, and not a judicial, proceeding, and trial by jury is not necessary therein, under the federal constitution.]

[3. The fugitive slave acts of 1793 and 1850 are constitutional, although they provide for rendition by state officers. Prigg v. Pennsylvania, 16 Pet. (41 U. S.) 558, followed.]

[This was an indictment against James Scott for the rescue of one Shadrach, a fugitive slave.]

SPRAGUE, District Judge. It does not belong to the judiciary to decide upon the wisdom or expediency of acts of congress. But we must of necessity decide upon their constitutionality. In doing so, however, we must remember that we are sitting in judgment upon the action of another great co-ordinate department of the government, every member of which was under oath to support the constitution. We must begin the inquiry, then, with the presumption that their legislation is rightful.

Several objections are made to the act of 1850: First, that congress has no right to